IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 1, 2025 Session

## CHRISTOPHER DAVID HODGE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 7359      A. Blake Neill, Judge**

_____

**No. W2024-01009-CCA-R3-ECN**

_____

Petitioner, Christopher David Hodge, appeals from the summary dismissal of his petition for writ of error coram nobis, which was filed approximately twenty years after his conviction for second degree murder. Because the evidence that Petitioner claims is newly discovered does not show that Petitioner is actually innocent of the underlying crime for which he was convicted, he is not entitled to equitable tolling of the statute of limitations. Discerning no error, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Daniel J. Murphy, Lewisburg, Tennessee, for the appellant, Christopher David Hodge.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; and Mark E. Davidson, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural History**

This case arises from the 2002 death of Ricky Ardd, Petitioner's cellmate at West Tennessee State Prison. After a fight erupted in the general population between two rival gangs, eleven inmates were transferred to Unit 2, where Petitioner was housed. *State v. Hodge*, No. W2003-01513-CCA-R3-CD, 2004 WL 2290495, at *1 (Tenn. Crim. App. Oct. 11, 2004), *perm. app. denied* (Tenn. Feb. 28, 2005). To ensure segregation between gang members, several inmates in Unit 2 were moved to different cells. *Id.* Even though the

victim was not involved in the fight, he was transferred from cell 15 to cell 24, a two-person cell where Petitioner was housed. *Id*.

Petitioner, who was in a segregation unit for refusing to accept a cell assignment, did not know the victim prior to the transfer. *Id*. at *3. Petitioner testified that, after the victim was moved to cell 24, he began ranting and using obscenities. *Id*. Petitioner claimed the victim "spat on his face and tackled him." *Id*. Petitioner put the victim in a "sleeper hold" and "on the floor four times." *Id*. Petitioner said that he released the victim each time but that the victim kept getting up and attacking him. *Id*. Petitioner claimed that he repeatedly tried to call out to the prison guards. He said he did not know that a sleeper hold would kill the victim. *Id*. Petitioner was not injured as a result of the victim's alleged attacks. *Id*.

At trial, Dr. O.C. Smith, the Shelby County Medical Examiner who performed the autopsy of the victim, testified as an expert in forensic pathology. He stated that the victim was "five feet, six inches tall and weighed 145 pounds." *Id*. at *1. Dr. Smith stated that the "victim's neck was scraped and bruised by a ligature" and that the victim "had bled into the muscles of his neck, as well as into the eyeball covering of both eyes." *Id*. Dr. Smith also noted "contusions and abrasions on the back of the neck, contusions of the tongue, and four superficial, non-fatal puncture wounds on the victim's back" and opined "that the injuries suffered by the victim, specifically the bleeding into tissues, indicated that the victim did not die an instantaneous death." *Id*. Dr. Smith concluded "that the victim did not die of manual strangulation but by the application of a ligature which left marks on the victim's neck." After being "shown a long strip of torn bed sheeting attached to a plastic fork" that was seized from cell 24, Dr. Smith opined that "the victim's injuries were consistent with strangulation by means of such an instrument." *Id*.

A jury convicted Petitioner of second degree murder, and the trial court sentenced Petitioner to thirty-five years' incarceration. *Id*. at *1.

Petitioner unsuccessfully challenged his conviction in a post-conviction relief petition, in which he claimed that trial counsel was ineffective because he failed to: properly object to Dr. Smith's testimony, adequately prepare for trial, and obtain independent testing of the strip of torn bed sheeting. *Hodge v. State*, No. W2005-01588-CCA-R3-PC, 2006 WL 1381647, at *1 (Tenn. Crim. App. May 19, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006).

In December 2015, Petitioner filed a petition for post-conviction DNA analysis of the torn bed sheeting. *Hodge v. State*, No. W2016-00892-CCA-R3-PC, 2017 WL 714037, at *2 (Tenn. Crim. App. Feb. 23, 2017), *perm. app. denied* (Tenn. May 24, 2017). The

post-conviction court found that there was not a reasonable probability "that the [P]etitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis" and denied the petition. *Id*. In affirming the judgment of the post-conviction court, this court noted:

> The issue at trial was not whether the Petitioner killed the victim but whether he did so knowingly or in self-defense. The Petitioner failed to explain in his petition and has failed to explain on appeal how a lack of DNA on the ligature at issue would be favorable. Presumably, a lack of DNA on the ligature would support his claim that he strangled the victim manually with a sleeper hold in an attempt merely to render the victim unconscious. However, because he is not claiming actual innocence or the existence of another perpetrator, DNA analysis is not required under Tennessee Code Annotated section 40-30-304.

*Id*. at *3.

On April 30, 2024, Petitioner filed two petitions, one for writ of habeas corpus and another for writ of error coram nobis. The trial court summarily denied the petition for writ of habeas corpus, and Petitioner does not challenge that denial on appeal. In the petition seeking error coram nobis relief, Petitioner alleged that, in 2023, he learned "the State's key witness, Dr. Smith, had been prosecuted by the federal government after [Petitioner]'s original trial and had further been terminated from his position in Shelby County." Petitioner acknowledged "that Dr. Smith's case resulted in a mistrial and federal prosecutors declined to retry the case." Petitioner stated that "[t]he totality of this information was not even disclosed to [Petitioner] until undersigned counsel conducted some research into the State's witnesses during the latter-half of 2023."[1]

On June 10, 2024, the coram nobis court issued a written order finding that Petitioner has failed "to plead with sufficient particularity both the substance of the newly discovered evidence and the factual basis for tolling the statute of limitations." The court found that "Petitioner's sole basis for his petition is that he discovered new evidence with which to impeach the medical examiner." The court concluded that Petitioner "failed to plead specific facts to show why he is entitled to equitable tolling of the statute of limitations" and denied the petition for writ of error coram nobis.

---

[1] Petitioner claimed "facts" came out at the trial that Dr. Smith had a "penchant for dishonesty, craving attention and even having a mental disorder." There is nothing in the record to support these so-called "facts." Petitioner's counsel acknowledged during oral argument before this court that what Petitioner called "facts" were basically allegations made by the federal prosecutor during Dr. Smith's trial.

- 3 -

Petitioner filed a timely notice of appeal challenging the coram nobis court's denial of his petition for error coram nobis relief.

**Analysis**

On appeal, Petitioner claims that the coram nobis court erred by denying his claim for relief based on "pertinent evidence" regarding criminal charges against the State's forensic expert, which he became aware of in 2023. The State argues that the coram nobis court properly found that the petition was untimely and that tolling was not warranted because Petitioner did not allege "newly discovered evidence of actual innocence" nor establish that the information concerning the State's forensic expert would have been admissible at trial.

A writ of error coram nobis in criminal cases is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). "A writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105(b). The writ comes "with stringent statutory requirements" and "the petition must be pled with specificity." *Clardy v. State*, 691 S.W.3d 390, 400 (Tenn. 2024). A trial court may grant the writ only when the coram nobis petition is in writing and describes "with particularity the nature and substance of the newly discovered evidence" and "demonstrates that it qualifies as newly discovered evidence." *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (citing *Payne v. State*, 493 S.W. 3d 478, 484-85 (Tenn. 2016)). Error coram nobis relief is only available "[u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time." Tenn. Code Ann. § 40-26-105(b). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007).

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed[] post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). "Timeliness under the statute of limitations . . . is not an affirmative defense; rather, it is one of the essential elements of a coram nobis claim." *Clardy*, 691 S.W.3d at 401. If a coram nobis petition "does not show on its face that it is filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations." *Nunley*, 552 S.W.3d at 829. "[T]he coram nobis statute of limitations may be tolled only if the petitioner produces newly discovered

evidence that would, if true, establish clearly and convincingly that the petitioner is actually innocent of the underlying crime of which he was convicted." *Clardy*, 691 S.W.3d at 407.

In this case, the allegations against Dr. Smith set out in the petition for writ of error coram nobis, even if true, do not establish clearly and convincingly that Petitioner is actually innocent of second degree murder.

A trial court may dismiss a petition for a writ of error coram nobis "on the face of the petition, without discovery or an evidentiary hearing, and even prior to notification to the opposing party." *Nunley* 552 S.W.3d at 825. The trial court did not abuse its discretion by summarily denying coram nobis relief. *See id.*

## Conclusion

The judgment of the coram nobis court is affirmed.

_s/ Robert L. Holloway, Jr._

ROBERT L. HOLLOWAY, JR., JUDGE